UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM B. O'NEAL, | ) | Case No. 1:06 CV 02761 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| DALE KOZLIK, et al., | ) | (Regarding ECF #28) |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiff William B. O'Neal is a prisoner who asserts 42 U.S.C. §1983 as a basis for his claims that his civil rights were violated during the course of his arrest (Complaint ECF #1, Amendment ECF #4, 16). The court reviewed plaintiff's numerous assertions in his complaint pursuant to 28 U.S.C. §1915 to ascertain whether he failed to state a claim upon which relief can be granted and dismissed all except plaintiff's claim of excessive force against defendant Chief of Police, Dale Kozlik and Patrolman, John Fink (Order, ECF #9). These defendants have answered and moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1]

The complaint proceeds to describe plaintiff's confrontation on October 13, 2004 with Ms.Tina Harrel and other employees of Christie's Cabaret in Brunswick, Ohio, where he carried in a handgun for his suicide. The complaint also alleges that while plaintiff was inside the bar, armed, holding Ms. Harrel captive, plaintiff was confronted by police who shot him. (Plaintiff's Complaint at ¶¶10, 11 and 12.) As to the incident, Plaintiff alleges that:

---

[1] Plaintiff was permitted to amend the complaint to clarify that his claims of deadly force were claims of excessive force (See ECF #4, 16).

1:06 CV 2761                                                    2

> As I watched the [flashlight] beam rounded the entrance way wall and struck me directly in the eyes. I recall turning my head away from the light, that is when I heard, what had to be gunshots. I found myself knocked partially to the ground, supported in part by the chair Tina was in and her lap.

(Plaintiff's Complaint, ¶12.)

> I tried to regain my footing and in doing so my gun discharged, striking Tina in the lower abdomen ***.

(Plaintiff's Complaint, ¶13.)

*Judgment on the Pleadings:*

Rule 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Pursuant to Rule 12 (h)(2), a motion for judgment on the pleadings is determined under the same standard of review as a motion to dismiss under Rule 12(b)(6).  *Ziegler v. IBP Hog Market*, 249 F.3d 509, 511-12 (6th Cir. 2005); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).

When considering a Rule 12(b)(6) motion to dismiss, "[t]he district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Columbia Natural Res. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595, 30 L.Ed 2d 652 (1972); *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999); *LRL Properties v. Portage Metropolitan Housing Authority*, 55

1:06 CV 2761 3

F.3d 1097, 1101 (6th Cir. 1995); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d at 512. Although the standard is essentially liberal, this standard of review does require more than a bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Id.*, quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences.). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

*Plaintiff's Excessive Force Claim:*[2]

Defendants argue that plaintiff is barred from asserting an excessive force claim as it would necessarily imply the invalidity of his prior conviction and that plaintiff's successive force claim is barred by the doctrine of *res judicata* or collateral estoppel. Plaintiff points to the public record of O'Neal's conviction for kidnapping, felonious assault with firearm specification, one count of carrying a concealed weapon and one count of illegal possession of a firearm in a liquor permit premises. See *State v. O'Neal*, 2006 WL 1009005, 2006 - Ohio - 1904 (Ohio App. 9 Dist.). Their underlying theory is that the allegations in the complaint, as amended, are barred because if taken as true would necessarily imply the invalidity of the state felonious assault conviction and that this

---

[2] Defendants have abandoned the claim that the matter is barred by Ohio's 2-year statute of limitation (Reply Brief at 2, ECF #59-2).

1:06 CV 2761                                                                 4

is the exact scenario discussed in *Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005), which stated that an excessive force claim that would necessarily imply the invalidity of the state assault conviction is barred. They further argue that the doctrine of *res judicata* requires the federal court to give the same effect to a state court judgment as would another court and plaintiff's allegation that Officers Scullin and Fink were responsible as the cause of plaintiff shooting Ms. Tina Harrel constitutes a direct challenge to the "knowing" element of his felonious assault conviction.

The barrier for these arguments is that it would require the court to take judicial notice of matters outside the pleadings. "Normally, when conducting review of a 12(b)(6) motion to dismiss, the court cannot consider facts outside the pleadings." *In re Trust Agent Com. Antitrust Litigation*, 2007 WL 3171675 at *5 (N.D. Ohio 2007). Consideration of matters outside the pleadings generally requires conversion of the Rule 12(b) motion to one for summary judgment. See Fed. R. Civ. P. 12(b) ("If . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pursuant to such motion by Rule 56"). However as is generally the case, for every rule there is an exception and one of these exceptions is that, "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, - F.3d -, 2007 WL 3353995 (6th Cir. 2007). The parameters of this exception, though, are rather ill-defined.

1:06 CV 2761                                                5

This exception which defendants seek to utilize was voiced as *dicta* in *Jackson v. City of Columbus*, where the court noted that an exhibit attached to a motion to dismiss could be considered part of the pleadings, "if they are referred to in the plaintiff's complaint and are central to plaintiff's claim." *Id.*, 494 F.3d 737, 745 (6th Cir. 1999). The court in *Jackson* went on to state that courts may also consider, "public records, matters of which the court may take judicial notice and letter decisions of governmental agencies." *Id.* In context it is implicit that these public records are referred to in the complaint and are central to the plaintiff's claim. This principle was explicit with the statement, ". . . if extrinsic materials merely 'fill in the contours and details' of a complaint they add nothing new and may be considered without converting the motion to one for summary judgment." *Armengau v. Cline*, 7 Fed. Appx. 336, 344 (6th Cir. March 1, 2001) (unpublished opinion), citing *Yeary v. Goodwill Indus. - Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997). This principle is echoed in *Commercial Money Center, Inc.* where the court noted that the public record offered was not offered to establish any disputed facts but to incorporate arguments articulated from an analogous situation. *Id.*, 2007 WL 3353995 at *4.

However, while there appears to be an overriding principle to limit extrinsic material to merely filling in the contours, it is difficult to find any example of its application in a criminal conviction context. The decision in *Commercial Money Center, Inc.* referred to *Lynch v. Leis*, 382 F.2d 642, 648 n. 5 (6th Cir. 2004), with respect to matters of public record. *Lynch*, though, concerned an attorney fee application, not a Rule 12(b) motion. Two cases where Rule 12(b)(6) review did occur were in *Rose v. Hartford Underwriters, Inc. Co.*, 203 F.3d 417 (6th Cir. 2007) and *Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001). No overriding principle was set out in either

1:06 CV 2761                                                6

case.  In *Rose* the district court was criticized for consideration of plaintiff's indictment for arson as a matter of public record and the decision pointed out that in prior similar instances the extrinsic material had been considered on motion for summary judgment.  *Rose*, 203 F.3d 420-22.  In *Kostrzewa*, the court confronted the situation where court documents were attached to defendant's reply brief to counter plaintiff's malicious prosecution claim, indicating that Kostrzewa pleaded guilty to the reduced sentence of driving without a valid license.  *Id.* at 247 F.3d at 643.  *Kostrzewa* did not rule out consideration of public records concerning criminal proceedings, but appears to state that if the district court accepts as true defendant's statement that a plea agreement had been reached regarding the charges, then it erroneously converted the motion to dismiss for one for summary judgment.  *Id.* 247 F.3d at 643-44.  On the other hand, the decision appears to state that if the district court reached its conclusion upon actual review of the public records themselves, then it was erroneous because the court documents submitted by the defendants did not indicate whether or not the plea agreement was made regarding the obstruction charges.  *Id.* 247 F.3d at 644.  It is difficult to discern any prospective rule from this decision.

In the matter at hand, there was no reference to the criminal conviction in either the complaint, as amended, or in the defendants' amended answer (ECF #1, 4, 16, and see ECF #22 Amended Answer), and no documents to support this argument are attached to the motion to dismiss or the reply.  If *Kostrzewa* is read as expressing an idea that the public records must be submitted, then defendants' arguments require conversion to a motion for summary judgment. The extrinsic reference to a state conviction certainly does not "fill in the contours and details" of the complaint and certainly adds a new matter which was not raised in either of the complaint, as amended, or the

1:06 CV 2761                                                                                          7

amended answer. As it now stands, there are no filings to substantiate the *Cummings* and *res judicata* argument raised by defendants, and consideration of the extrinsic evidence would require conversion of the motion into one for summary judgment. This, though, will not be necessary since defendants are entitled to qualified immunity.

*Qualified Immunity:*

Officer Scullin and Fink maintain that they are entitled to qualified immunity on plaintiff's excessive force claim. Government officials performing discretionary functions are shielded from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights by which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "All claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, an investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Chavez v. Martinez*, 538 U.S. 760, 773 n. 5, 123 S.Ct. 1994, 2004 n. 5, 155 L.Ed.2d 984 (2003).

In *Saucier v. Katz*, the Supreme Court laid out two principles for application to *Graham's* reasonableness inquiry in assessing whether a defendant is shielded by qualified immunity. First, for the right to be clearly established, "a constitutional right would have been violated on the facts alleged." *Id.*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001). Second, "assuming

1:06 CV 2761                                                8

that the violation is established the question whether the right was clearly established must be considered on a more specific level. . ." *Id.* This requires review under "the specific context of the case, not as a broad general proposition." *Id.*, 533 U.S. at 201, 121 S.Ct. at 2156. The court has found under its §1915 review that plaintiff states a claim of excessive force. Accordingly the first part of the two-part inquiry is fulfilled, a violation of a constitutional right has occurred on the facts alleged. See *Saucier*, 533 U.S. at 200. The next part of the inquiry must be undertaken for review in the specific context of the case.

Plaintiff carries the burden to show that defendants are not entitled to qualified immunity. *Smoke v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006). Plaintiff urges the court to apply *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). *Garner* held that it was unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead." 471 U.S. at 11. *Garner* also stated that the use of deadly force is constitutionally permissible if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others . . ." *Garner*, 471 U.S. at 11; and see *Livermore ex. rel. Rhom v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007). Reliance on *Garner* alone, though, would lead to the same error that was criticized both in *Saucier* and *Brosseau,* that "this 'inquiry' 'must be undertaken in light of the specific context of the case, not a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004), quoting *Saucier*, 533 U.S. at 201. The court is required to review  cases involving similar conduct to ascertain whether there was fair notice that the officers' conduct violated a clearly established right as evaluated under particularized circumstances.

1:06 CV 2761                                            9

In his complaint, as amended, plaintiff states that he entered Christy's Cabaret on October 13, 2004 with the intention of confronting one of the dancers, Tina Harrel about "some personal issues and then commit suicide in her presence." (¶5). When he was asked to leave by the club manager, plaintiff removed a gun from beneath his coat telling the manager that he needed to talk with Tina. ( ¶¶6-7). Plaintiff states he approached Tina who was sitting at a table close to the manager's office and attempted to talk to her but "she kept repeating not to hurt her." Tina told plaintiff also to remember her daughter and that things could be worked out. (¶8). At that point the customers had left and the manager approached plaintiff with the bouncer and asked him is there was anything else she could do, and plaintiff requested a drink. *(Id).* The manager returned with the drink and asked plaintiff to leave and not hurt anyone. Plaintiff stated he told the manager that "everything would be all right, I just needed to talk with Tina." (¶9).

Plaintiff further relates that after the manager left he observed a flashlight beam coming from a door to the outside. In response plaintiff states that he raised his gun and placed it next to his right ear pointing up with Tina beside him by his right hip. (¶10). So what plaintiff is stating is that he had his hostage with the gun over her head. At that point plaintiff says he heard gunshots and found himself knocked partially to the ground and in an attempt to regain his footing, his gun discharged striking Tina in the lower abdomen. (¶¶11-13).

The Supreme Court in *Brosseau* found qualified immunity existed in regard to shooting a disturbed suspect who is subject to a felony-no-bail-warrant and who fled from the officer in a vehicle. *Id.*, 543 U.S. at 200. In *Bouggess v. Mattingly*, 42 F.3d 886 (6th Cir. 2007*)* the police

1:06 CV 2761                                                      10

officer did not have probable cause to shoot what he perceived to be an unarmed suspect who is attempting to flee after arrest.  *Id.* at 890-91.  In *Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996), qualified immunity was denied based on plaintiff's claim that he had simply walked to the front door with his hands at his side and that he was shot while still inside his house before he opened the door.  *Id.* at 1163.  The court found it was unclear whether plaintiff had threatened the officer with a weapon.  As the analysis emphasizes, it was the officer's belief prior to the shooting that matters.  *Id.*  In contrast, qualified immunity existed in *Livermore*, *supra.* where the armed suspect was killed in the process of aiming a firearm at an exposed officer.  *Id.*, 476 F.3d at 400.

Similarly in *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994), there was no qualified immunity where the suspect was armed but did not point the gun at anyone or threaten to use it, no one appeared to be in any particular danger and the officers waited four hours before conducting their first probe.  *Id.* at 997-98.  In *Howser v. Anderson*, 150 Fed. Appx. 533 (6th Cir. 2005) (unpublished opinion), no qualified immunity existed for a police officer who did not observe that the suspect was armed and only observed that he had stopped and was speaking to an owner of a local business.  The officer only feared that there was a possibility that the suspect would take the business owner as a hostage and then shot the suspect after he had gone to his knees rather than lying on the ground as instructed.  In *Burnett v. Gee*, 137 Fed. Appx. 806 (6th Cir. 2005) (unpublished decision) there was no excessive force when a sheriff entered a trailer where there was an apparent hostage situation but the suspect released the hostage at the sheriff's request.  *Id.*, 137 Fed. Appx. at 808.  The suspect was shot during the struggle when he pointed his rifle at the sheriff's vest.  In *Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002), the officers were entitled to

1:06 CV 2761                                                                                11

qualified immunity in confronting a deranged husband who had taken his wife and son hostage. In that situation the police were using deadly force during a tactical assault on the home and it was undisputed that the suspect was firing on the officers and therefore posed immediate threat to the officers. *Id.* at 508.

Plaintiff adds that he contemplated suicide. In *Mercado v. City of Orlando*, qualified immunity was denied where a suicidal plaintiff was shot in the head with a baton-firing Sage SL6 launcher while, "sitting on the kitchen floor, crying... holding the knife in both hands and pointing it toward his heart [with] a telephone cord ... still wrapped around his neck." *Id*., 407 F.3d 1152 ( 11th Cir. 2005). In contrast to the matter at hand, the spouse had telephoned police to report the suicide attempt and had not been threatened. *Id.,* at 1154.

Based on the face of the complaint the two defendant Brunswick police officers confronted what appeared to be a hostage situation. Plaintiff held a gun over Tina and the bar manager had been pleading for him not to harm anyone. Plaintiff's actions preceding the shooting were reasonably construed as acts posing physical harm to others. Although the court found that this stated a claim for excessive force, case law provides no fair warning that firing at a suspect under these specific circumstances constituted an unconstitutional use of deadly force. The defendants are entitled to qualified immunity.

1:06 CV 2761                                                    12

### *RECOMMENDATION*

Defendants' motion for judgment on the pleadings should be granted because defendants are shielded by qualified immunity. Judgment should be enter in favor of the defendants and the case dismissed.

                                                                s/James S. Gallas
                                                  United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: December 11, 2007